Ginger G. Mooney, OSB No. 031261
Ginger G. Mooney, LLC
1017 May Street, Suite 200
Hood River, Oregon 97031
Telephone (541) 716-5650
Fax (503) 389-1585
contact@mooneylaw.org
Attorney for Plaintiff June Doe

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JUNE DOE,**

     Plaintiff,

     **v.**

**MIKE REESE**, Director Oregon
Department of Corrections (ODOC);
**COLETTE PETERS,** former Director
Oregon Department of Corrections
(ODOC), **BRIAN BELLEQUE**, ODOC
Deputy Director (former); **HEIDI
STEWARD**, ODOC Deputy Director;
**MICHAEL GOWER,** ODOC Assistant
Director of Operations (former); **ROB
PERSSON,** ODOC Assistant Director of
Operations, ODOC Westside Institutions
Administrator (former), Superintendent
Coffee Creek Correctional Facility (CCCF)
(former); **PAULA MYERS**,
Superintendent Coffee Creek Correctional
Facility (CCCF) (former); **ERICKA
SAGE**, ODOC PREA Administrator; **LEVI
D. GRAY**, Corrections Officer at CCCF
(former); **KELLEE MOORE,** ODOC
Behavioral Health Counselor,
**JOHN/JANE DOE**, ODOC Behavioral
Health Counselors and other employees;
**OREGON DEPARTMENT OF**

USDC Case No. 3:24-cv-2011

**CIVIL RIGHTS COMPLAINT**

42 U.S.C. §§ 1983, 1985 (Violation of Civil
Right under Color of Law), Eighth
Amendment Failure to Protect, Negligent
Hiring, Failure to Supervise, Fourteenth
Amendment Violation of Right to Bodily
Privacy, Negligence, Intentional Infliction of
Emotional Distress

**DEMAND FOR JURY TRIAL**

**Page 1 of 41 – CIVIL RIGHTS COMPLAINT**

**CORRECTIONS** and the **STATE OF OREGON**, each sued in their individual and official capacities.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff by and through her attorney, Ginger G. Mooney, brings her complaint herein.

Plaintiff states and alleges as follows:

## INTRODUCTORY STATEMENT

### 1.

This is a civil rights action brought by Plaintiff, June Doe, in which she seeks relief for the defendants' violations of her rights secured by the United States Constitution, including the Eighth and Fourteenth Amendments, and by the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985.

### 2.

Plaintiff, a vulnerable person, is an Adult in Custody (AIC) in Coffee Creek Correctional Facility (CCCF), an Oregon Department of Corrections (ODOC) facility. Plaintiff was coerced into performing sexual acts by former Correctional Officer (CO) Sergeant Levi D. Gray, who was employed by ODOC. Defendants failed to provide adequate supervision and training of staff and failed to provide adequate safeguards and protections for Plaintiff from Defendant Gray, who sexually abused plaintiff in 2018 while employed at CCCF. Plaintiff's right to bodily privacy was violated without any compelling state interest.

### 3.

Plaintiff is filing this suit under a pseudonym because of the sensitive and highly personal nature of the case, which involves allegations of sexual assault. Plaintiff seeks declaratory, nominal

**Page 2 of 41 – CIVIL RIGHTS COMPLAINT**

and compensatory relief, and punitive damages, including reasonable costs, attorney's fees and disbursements, pursuant to 42 U.S.C. §1988 and ORS 124.100(2)(a)-(b).

## JURISDICTION AND VENUE

### 4.

Jurisdiction exists under 28 U.S.C. § 1331 because this action arises under the laws of the United States. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1343 because Plaintiff has brought this action to seek redress for the deprivation of rights secured by the United States Constitution. In addition, this court has supplemental jurisdiction under 28 USC §1367 over the state tort claims herein because they are so related to claims with original jurisdiction that they form part of the same case or controversy.

### 5.

Venue is proper under 28 U.S.C. § 1391(b)(2), because the acts and omissions alleged herein primarily occurred in Washington County, Oregon. Further, one or more of the defendants reside in the District of Oregon and Plaintiff's claims for relief arose in this district.

## PARTIES

### 6.

Plaintiff is a resident of Oregon and is an incarcerated individual. She presently resides in Oregon.

### 7.

Defendant Colette Peters was at all relevant times the Director for ODOC. Defendant Peters had ultimate oversight over ODOC employees and AICs and was responsible for

**Page 3 of 41 – CIVIL RIGHTS COMPLAINT**

enforcement and compliance with federal law, including the United States Constitution and the mandates of the Prison Litigation Reform Act (PLRA), the Prison Rape Elimination Act of 2003 (PREA), and the laws of the State of Oregon. Defendant Peters approves and signs PREA audits for every ODOC institution in Oregon. She has implemented a zero-tolerance policy for sexually assaulting AICs within ODOC by employees of ODOC. Defendant Peters previously led former Governor Kate Brown to certify to the United States government that Oregon is meeting all requirements of PREA as necessary to continue to secure federal funding for the State of Oregon.

**8.**

Defendant Mike Reese is the current Director for ODOC.

**9.**

Defendant Brian Belleque was the Deputy Director for ODOC until approximately May 1, 2019, and was responsible for carrying out and implementing all policies of the Director and the Policy Group. He was responsible for the overall safe and secure operation of all ODOC correctional institutions.

**10.**

Defendant Heidi Steward is the current Deputy Director of ODOC, and has held this position since April 1, 2019. Heidi Steward is responsible for carrying out and implementing all policies of the Director and the Policy Group. She is responsible for the overall safe and secure operations of all ODOC correctional institutions. Defendant Heidi Steward was previously the Assistant Director of Correctional Services.

**11.**

Defendant Michael Gower was the Assistant Director of Operations for ODOC until December 2019. He was the direct supervisor of every ODOC Superintendent within ODOC.

**Page 4 of 41 – CIVIL RIGHTS COMPLAINT**

Defendant Gower had the authority to direct and implement changes within ODOC prisons. He oversaw the budgeting for each institution and approves budget requests for security improvements within ODOC. Defendant Gower was responsible for ensuring that Oregon prisons are safe, civil and productive. Additionally, Defendant Gower was responsible for institutional management, AIC transportation, security threat group management, emergency preparedness and AIC work activities. Defendant Gower, as Assistant Director of Operations, was responsible for PREA compliance and the safe and secure operation of ODOC Institutions.

**12.**

Defendant Rob Persson is the current Assistant Director of Operations for ODOC, and has held this position since approximately December 2019. Previously, Defendant Persson was the Superintendent of CCCF from approximately March 2015 to May 2018, and was the direct supervisor of all CCCF staff during this time. From approximately May 2018 to December 2019, he was ODOC's Westside Institutions Administrator, and was directly responsible for the operations of eight ODOC institutions, including CCCF, during that time.

**13.**

Defendant Paula Meyers was Superintendent at CCCF during all relevant times. Defendant Meyers was responsible for supervising Defendant Gray and all other corrections staff and had control over the activities that happened herein.

**14.**

Defendant Ericka Sage was the ODOC PREA Administrator at all relevant times. As the PREA Administrator she would pass along PREA audit recommendations to Defendants Peters, Belleque, Steward, Gower and the CCCF Superintendent and Assistant Superintendent of Security for CCCF for implementation.

**Page 5 of 41 – CIVIL RIGHTS COMPLAINT**

**15.**

Defendant Levi D. Gray, was a corrections sergeant at CCCF at all relevant times. He was hired by the department of corrections in January 2010. He first worked at the Mill Creek Correctional Facility and later at the Oregon State Correctional Institution and Columbia River Correctional Institution. He resigned July 31, 2011, but was rehired by the department on May 4, 2012 to work at CCCF. He remained at CCCF until he was placed on administrative leave May 24, 2023.

**16.**

Defendant Kellee Moore is a Behavioral Health Services counselors at CCCF who knew or should have known about Gray's behavior and unauthorized conduct, and who substantially contributed to the risk that such conduct would occur.

**17.**

Defendants John/Jane Does are security staff at CCCF who knew or should have known about Defendant Gray's behavior and unauthorized conduct, and who substantially contributed to the risk that such conduct could occur.

**18.**

Defendants John/Jane Does are and were, at all times relevant, employees of ODOC and/or other state officials whose identities are currently unknown to Plaintiff. All Doe defendants have been personally involved in the violations alleged herein. Plaintiff will amend this complaint to formally name all Doe defendants once their identities are revealed to Plaintiff during discovery. All Doe defendants are sued in their official and individual capacities. All Doe defendants have acted under color of state law at all times relevant to this complaint.

/ / /

**Page 6 of 41 – CIVIL RIGHTS COMPLAINT**

**19.**

All parties acted under color of state law at all times relevant to this complaint.


**STATUTE OF LIMITATIONS**

**20.**

Plaintiff was unable to file this complaint within five years of the sexual abuse described herein in accordance with ORS 12.118 because she did not discover the causal connection between the sexual abuse and her injuries until March of 2023. At the time of the incident, Plaintiff did not understand that Sgt. Gray's behavior was sexual abuse. She was convinced she was the one who had done something wrong by "compromising an officer," and feared that she would get in trouble if she made a report. Plaintiff maintains the statute of limitations was tolled until the time she learned in March of 2023 that what she had experienced was sexual abuse and that she would not be held to blame or punished for Sgt. Gray's actions.


**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

**21.**

Plaintiff has exhausted all available administrative remedies with respect to all claims and all Defendants involved in the events described herein. To the extent that Plaintiff did not exhaust all available administrative remedies, she was excused from doing so or did so after discovery of her injuries. Plaintiff sent a Notice of Tort Claim to the Department of Administrative Services/Risk Management with the State of Oregon within the time period allowed based on her discovery of her injury.


**Page 7 of 41 – CIVIL RIGHTS COMPLAINT**

## FACTUAL ALLEGATIONS

### (Coffee Creek Correctional Facility)

### 22.

Coffee Creek Correctional Facility (CCCF) is located in Wilsonville, Oregon and is Oregon's only prison housing female AICs. It also serves as the intake center for all prisoners entering ODOC. The facility opened in 2001 and contains 1,684 beds.

### 23.

CCCF has cell and dormitory housing, work programs, skills training, treatment programs, health services, religious service, physical plant, a central records unit, and administrative areas.

### 24.

Since opening, CCCF has been the location of numerous sexual assaults, rapes and misconduct by staff against female AICs.

- 2004 – Lt. Jeffrey Allen Barcenas pled guilty to four counts of official misconduct for engaging in sex with a female AIC.

- 2008 – CO Richard Mitchell was accused of coercing female AICs to expose themselves to and perform sexual acts upon Mr. Mitchell.

- 2008 – CO Robert Dunlap was accused of abuse against a female AIC housed in the mental health unit, working in tandem with CO Mitchell to threaten the AIC into performing sex acts on Dunlap.

- 2009 – Paul Golden, a CCCF employee, was convicted of 15 counts of custodial sexual misconduct and the State of Oregon was sued by the female AICs.

- 2009 – Richard Kaleo Rick, a civilian plumber working at CCCF, was

**Page 8 of 41 – CIVIL RIGHTS COMPLAINT**

convicted, and multiple lawsuits were filed against the State, for Rick's sexual abuse of AICs.

- 2009 – Troy Bryant Austin, a civilian maintenance worker at CCCF, was convicted and the State was sued for Austin's sexual abuse of AICs.

- 2009 – CO Darcy Aaron MacKnight was convicted of custodial sexual misconduct for having sex with a female AIC.

- 2010 – Christopher Don Randall, a Food Services Coordinator, pled guilty to two counts of official misconduct for engaging in sexual intercourse with a female AIC.

- 2012 – Jeremy Joseph Veelle, a Physical Plant employee, was charged with official misconduct for sexually abusing a female AIC.

- 2012 – Shawn Jacob Riley, a civilian employee at CCCF, was arrested and charged with official misconduct and custodial sexual misconduct for sexual acts against a female AIC.

- 2016 – CO Edgar Mickels was arrested and charged with first degree sexual misconduct and three counts of custodial sexual misconduct for engaging in sexual contact with at least one female AIC.

- 2017 – CO Brian Joseph Balzer was convicted of first degree custodial sexual misconduct for his behavior with a female AIC at CCCF. Balzer's victim alleges there were other victims.

- 2017 – Dr. Robert W. Snider was sued by three female AICs alleging they were sexually abused by Dr. Snider during unsupervised examinations while incarcerated at CCCF.

**Page 9 of 41 – CIVIL RIGHTS COMPLAINT**

- 2019 – At least 12 female AICs filed federal lawsuits against former ODOC registered nurse Tony Klein and additional ODOC medical staff members, accusing Klein of a long pattern of sexual grooming, assault, battery and retaliation. In October 2023, Tony Klein was convicted and sentenced to 30 years in prison.

- 2019 – Douglas Cloutier, an ODOC kitchen employee, has faced complaints by at least four female AICs for sexual assault and battery.

- 2021 – Richard S. Alberts, Jr., a former CO at CCCF, was convicted on federal charges of smuggling drugs and illicit contraband into CCCF. Alberts also pleaded guilty and was convicted in Washington County Circuit Court on charges of first-degree custodial sexual misconduct for raping a female AIC in CCCF.

- 2022 – Lindsay Noack, who was previously a correctional Capitan at CCCF and lead PREA Inspector since 2019, was put on administrative leave in early 2022 and fired in the summer of 2023, for allegedly having a relationship with an AIC.

**25.**

In spite of this pattern of sexual abuse, at the time of Plaintiff's injuries, management defendants had failed to take effective action to prevent the sexual abuse of AICs at Coffee Creek Correctional Facility.

/ / /

/ / /

/ / /

**Page 10 of 41 – CIVIL RIGHTS COMPLAINT**

## OREGON STATUTES

### 26.

Oregon Revised Statutes 423.020(1)(d) mandates the Oregon Department of Corrections to provide adequate food, clothing, health and medical care, sanitation and security for persons confined.

### 27.

Oregon Revised Statutes 423.075(5)(d) states the Director of the Oregon Department of Corrections shall provide for the safety of all prisoners in the custody of the department.

### 28.

On August 20, 2012, the Department of Justice issued the final rule adopting national standards to prevent, detect, and respond to prison rape, as required by the Prison Rape Elimination Act of 2003 (PREA).

### 29.

ODOC has a zero-tolerance policy for sexual abuse. The PREA is a federal law that seeks to eliminate sexual assaults and sexual misconduct against prisoners. This law applies to all federal and state prisons, jails, police lock-ups, private facilities, juvenile facilities, and community correctional settings. The Bureau of Justice Statistics carries out, annually, a comprehensive statistical review and analysis of the incidence and effects of prison rape. The major provisions of the standards are: general prevention planning, supervision and monitoring, cross gender searches and viewing, training and education, screening, reporting, responsiveness planning, investigations, discipline, medical and mental health, grievances, and audits. ODOC continues its efforts to maintain safety for all AICs and others inside the facilities keeping PREA as a top priority. ODOC in AIC publications, handbooks, posters, fliers, and other types of communications with AICs has

**Page 11 of 41 – CIVIL RIGHTS COMPLAINT**

created an expectation that ODOC will do everything within its power to protect AICs from staff

assault and that ODOC expects AICs to be respected by staff at all times.

## PRISON RAPE ELIMINATION ACT

### 30.

The Prison Rape Elimination Act (PREA) became federal law in 2003. The Oregon

Department of Corrections adopted the mandates of PREA in Rule 40.1.13, which was modified

in September of 2018.

### 31.

PREA's purpose is to provide for the analysis of the incidence and effects of prison rape in

federal, state and local institutions, and to provide information, resources, recommendations and

funding to protect individuals from prison rape. PREA seeks to establish a zero-tolerance policy

regarding rape and sexual abuse inside correctional facilities. PREA also mandated the publication

of standards to ensure compliance and to improve prevention, detection and response strategies in

addressing sexual abuse and assault.

### 32.

The requirements of ODOC Policy 40.1.13 and PREA include prevention, planning,

investigation, prosecution, and provide counseling and treatment to victims. Oregon identifies

itself as being committed to a zero-tolerance standard for sex abuse and sex harassment.

### 33.

The Agency PREA Coordinator is responsible for the development, implementation and oversight

of the department's compliance with the PREA standards in all department facilities. Policy

40.1.13 II.A. In order for such coordination to occur, the Operations Division, which Defendant

**Page 12 of 41 – CIVIL RIGHTS COMPLAINT**

Ginger G. Mooney, OSB No. 031261
GINGER G. MOONEY, LLC
1017 May Street, Suite 200, Hood River, OR 97031
Telephone (541) 716-5650 ● Facsimile (503) 389-1585
contact@mooneylaw.org

Gower is in charge of, must authorize implementation recommendations. Without the adoption, cooperation and approval of the Operations Division, the Agency PREA Coordinator lacks authority to enact change.

## 34.

The PREA compliance manager is a management staff person designated by the institution functional unit manager, with sufficient time and authority to coordinate the facilities' efforts to comply with the federal PREA standards. Policy 40.1.13 II.F. However, absent the approval and direction of the Superintendent and Assistant Superintendent of Security, the PREA Compliance Manager lacks operational authority to make any changes or order anything to occur differently at an institution.

## 35.

Sexual abuse of an AIC by a staff member, contractor or volunteer includes any of the following acts, with or without consent of the AIC, detainee, or resident:

1) Contact between the penis and vulva or the penis and anus including any degree of penetration;

2) Contact between the mouth, the penis, vulva, or anus;

3) Contact between the mouth and any body part where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

4) Penetration of the anal or genital opening by hand, finger, object, or other instrument, that is unrelated to official duties or where the staff member contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

**Page 13 of 41 – CIVIL RIGHTS COMPLAINT**

5)      Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks that is unrelated to the official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

6)      Any attempt, threat, or request by a staff member, contractor, or volunteer to engage in the activities described in this section;

7)      Any display by a staff member, contractor, or volunteer of his or her uncovered genitalia, buttocks, or breast in the presence of an AIC, detainee or resident; and

8)      Voyeurism by a staff member, contractor or volunteer. Voyeurism by a staff member, contractor, or volunteer means an invasion of privacy of an AIC by staff for reasons unrelated to official duties, such as peering at AIC who is using a toilet in their cell to perform bodily functions, requiring an AIC to expose their buttocks, genitals, or breasts; or taking images of all or part of an AIC's naked body or of an AIC performing bodily functions.

Policy 40.1.13.II.G.

**36.**

Sexual Harassment is defined as:

Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one AIC directed toward another, and repeated verbal comments or gestures of a sexual nature to an AIC by a staff member, contractor, or

**Page 14 of 41 – CIVIL RIGHTS COMPLAINT**

volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.

Policy 40.1.13.II.L.

## 37.

The sexual abuse liaison is a management staff person designated by the institution functional unit manager to coordinate response reporting and monitoring of AIC abuse within the institution. The sexual abuse liaison shall be assigned as the Sexual Abuse Response Team (SART) leader.

## 38.

The SART is a team of institution staff consisting of a Behavioral Health Services (BHS) staff member, a Medical Services staff member and the sexual abuse liaison who are designated by the functional unit manager to respond to all allegations of AIC sexual abuse or sexual coercion.

## 39.

All staff are covered by the mandates of PREA and Policy 40 including all ODOC employees, OCE employees, contract service providers and volunteers.

## 40.

ODOC Policy 40 mandates that all staff "must be able to recognize the signs of sexual abuse and sexual harassment and understand their responsibility in the detection, prevention, response and reporting of an alleged sexual abuse or sexual harassment."

## 41.

Each facility is required to conduct and document unannounced rounds on all shifts to deter staff sexual abuse and sexual harassment. Staff is prohibited from alerting other staff members that

**Page 15 of 41 – CIVIL RIGHTS COMPLAINT**

the supervisory rounds are occurring.

**42.**

ODOC shall ensure that each facility it operates develops and documents a staffing plan that provides for adequate levels of staffing to protect AICs against sexual abuse.

**43.**

Policy 40 mandates access to services, including reporting, for AIC victims of any and all sexual abuse or sexual harassment. AICs who are found to have made "bad faith" allegations of sexual abuse will be held accountable through all means available to ODOC, including discipline. It is not known to Plaintiff which ODOC staff members are properly trained in sexual abuse and misconduct investigations.

**44.**

Policy 40 mandates all staff to report "immediately any knowledge, suspicion or information regarding sexual abuse, sexual harassment, retaliation by AIC or staff for reporting or staff neglect or violation of responsibility that may have contributed to such incidents.

**45.**

Policy 40 sets forth the procedures to be followed when a complaint of sexual abuse or harassment is received. The PREA Compliance Manager shall be responsible for monitoring all AICs and staff to protect from retaliation or harassment by other staff or AICs. Typically, CCCF requests the Oregon State Police to conduct criminal investigations into allegations of sexual abuse inside the prison.

**46.**

ODOC states there is to be no long-term forfeiture of services and programs for victims of sexual abuse and that the safety of the victim is paramount. AICs will be housed in the least

**Page 16 of 41 – CIVIL RIGHTS COMPLAINT**

restrictive housing, will have timely unimpeded access to emergency medical treatment, necessary post event treatment including coordination with community hospitals, testing for sexually transmitted diseases, comprehensive information and timely access to all lawful pregnancy-related medical services, referral to Behavior Health Services, and communication with a designated sexual abuse liaison regarding further information required.

**47.**

Mental health services are required to be provided for victims of sexual abuse including timely, unimpeded access to appropriate mental health evaluation services without financial cost, comprehensive information on the limits of confidentiality and duty to report, completion of a mental health evaluation to include suicide risk screening, notification of the Officer in Charge and Medical Services regarding recommended actions and follow up mental health services.

**RESPONSE TO PRIOR PREA INVESTIGATIONS**

**48.**

Following the sexual abuse investigations noted in paragraph 24 above, many of the women victims were placed in segregation, lost their jobs and/or housing, and were limited in visits with children and family. The superintendent for CCCF initiated an internal review which found that the facility had inadequate security patrols, rooms without windows or adequate surveillance, an overall shortage of surveillance cameras, and too many employees with access to limited private areas. The superintendent adopted a "Rule of Three" which prohibits entry into some parts of the prison unless three people—a mix of staff and AICs—are present.

**49.**

While neither PREA nor ODOC Policy 40 create a private right of action, national

**Page 17 of 41 – CIVIL RIGHTS COMPLAINT**

standards as implemented by the rule create duties and expectations of staff. Additionally, AICs have rights surrounding "conditions of confinement" under the Eighth Amendment to the United States Constitution. Both the PREA and Oregon policy provide notice to employees regarding expected performance and the parameters of unlawful behavior.

### JUNE DOE

**50.**

In June of 2014, Plaintiff June Doe entered Coffee Creek Correctional Facility (CCCF). June Doe entered CCCF custody when she was 26 years old.

**51.**

Throughout her incarceration, June Doe struggled with and has been treated for severe anxiety.

**52.**

On March 31, 2018, June Doe was placed in segregated housing, in a close supervision cell. Over time, this placement caused her to experience severe, crisis level panic attacks.

**53.**

On April 12, 2018, June Doe was seen by Kellee Moore at Behavioral Health Services (BHS) because she was found sitting on her bed rocking back and forth and crying. BHS found June Doe to be tearful and to have shallow breathing. She reported having a hard time being in close supervision due to not being able to "see the clock or hear/talk to other people." She also reported that the slamming shut of her cell door was bringing up traumatic memories for her.

**54.**

Upon information and belief, on Friday, April 27, June Doe again requested to be moved

**Page 18 of 41 – CIVIL RIGHTS COMPLAINT**

because of her anxiety. According to June Doe, the person she spoke to said they would speak to Sgt. Kellee Moore. It was June Doe' impression at the time that BHS recommended that she be moved out of segregation. However, once BHS was unavailable for the day, June Doe was told that she would be transferred to another close supervision cell. At this point, June Doe experienced severe emotional distress and began screaming and crying but was not moved out of segregation.

### 55.

Upon information and belief, on Saturday, April 28, Sgt. Levi Gray was on duty in the unit where June Doe, was housed. June Doe told him about her severe anxiety, and again expressed the desire to be moved. Sgt. Gray looked her up and down pointedly and asked her what she would do for him if he agreed to move her. Confused, June Doe asked Sgt. Gray what he wanted. Sgt. Gray told June Doe to wait and left for a moment, saying something about the camera in her cell. Upon information and belief, Sgt. Gray was checking whether a staff member was present in the surveillance room.

### 56.

When Sgt. Gray returned, he called June Doe to the window and instructed her to expose her genitals to him and masturbate in front of him. At first, June Doe asked, "Are you serious?" Sgt. Gray responded, "Do you want to move?" Desperate to be out of the close supervision cell, June Doe removed her pants and did as he asked. Afterwards, Sgt. Gray said, "Nice," winked at her, and told her he would see what he could do about moving her.

### 57.

The following day, on Sunday, April 29, 2018, June Doe was moved out of close supervision. She had been housed in segregation for possession of contraband. Breaking protocol, and without regard for June Doe's safety or wellbeing, Sgt. Gray secretly returned June Doe'

**Page 19 of 41 – CIVIL RIGHTS COMPLAINT**

contraband to her when she was moved out of segregation.

**58.**

Some time later, Sgt Gray came to June Doe' cell window and raised his eyebrows at her suggestively, then stood waiting with a smile on his face. June Doe understood this to be a demand for a repeat of the previous incident. She removed her clothes and masturbated in front of him again. Sgt. Gray mouthed to her that she was "sexy," and after a minute said loudly, "Okay, I'll look into that. I gotta finish my check." He then winked at her and walked away. A similar incident occurred at least one more time.

**59.**

On May 8, 2018, June Doe reported to Behavioral Health Services that she had felt suicidal while in segregation. She also reported that she had been spending a great deal of time isolating and crying. Around June of 2018, June Doe began complaining of severe GI pain, which never went away. On October 27, 2020, June Doe reported to her doctor that she had "near constant abdominal pain" which had been an issue for some time. Again, on April 9, 2023, she reported that she had experienced acute digestive pain that had lasted for five years.

**60.**

Sgt. Gray groomed June Doe to believe that what he subjected her to was her fault and that she would get in trouble if she reported it. She was afraid that if anyone found out about what Sgt. Gray asked her to do, she would be held responsible, she would be punished, and her sentence would be increased. June Doe witnessed an environment of retaliation by CCCF/ODOC staff against AICs who report such incidents, which would have prevented her from speaking out even if she had understood her experiences as abuse before 2024. This included witnessing other female AICs transferred to out of state facilities after reporting sexual assault incidents against CCCF

**Page 20 of 41 – CIVIL RIGHTS COMPLAINT**

Ginger G. Mooney, OSB No. 031261
GINGER G. MOONEY, LLC
1017 May Street, Suite 200, Hood River, OR 97031
Telephone (541) 716-5650 ● Facsimile (503) 389-1585
contact@mooneylaw.org

employees.

**61.**

It was only in March of 2024 that June Doe came to understand that she was a victim, after she revealed to her boyfriend Marc during a phone call, that she had been asked to masturbate in front of a correctional officer. Marc told her that this was abuse and that she should report it. June Doe argued with him at first, saying that she could not report the correctional officer because she participated in what happened, but after considering it, she decided to speak to BHS.

**62.**

According to June Doe, she realized for the first time, in processing the incident with BHS staff, that she had been a victim of abuse and was not to blame for the incidents with Defendant Gray. After reporting these incidents to PREA Officer Gonzalez, June Doe was provided with information that gave her a new understanding of what rape and sexual assault was, particularly in the context of correctional confinement. BHS counselor Kelly further explained to her, and June Doe understood, that she was, in fact, a victim of Defendant Gray.

**63.**

On August 23, 2023, Defendant Gray was charged with several counts of Custodial Sexual Misconduct in the First Degree and Official Misconduct in the First Degree in Washington County Circuit Court. The case is scheduled to go to trial on December 10, 2024.

**64.**

On July 25, 2024, Officer Patricia Lund from the Oregon State Police scheduled an interview with June Doe, presumably to discuss the incidents in this complaint. However, OSP cancelled this interview, and it was never rescheduled.

/ / /

**Page 21 of 41 – CIVIL RIGHTS COMPLAINT**

**65.**

Based upon public records, Defendant Gray had been previously investigated for sexual abuse at CCCF. The case was referred to the Washington County District Attorney who declined to prosecute. Management defendants allowed Defendant Gray to continue working in the women's prison after the prior sex abuse was reported.

**66.**

From 2005 to 2008, prior to being employed at Coffee Creek Correctional Facility, Defendant Gray worked as a bouncer and manager in a strip club in Portland called The Viewpoint. By his own admissions in a lawsuit he filed in April 2010, the club overserved intoxicated patrons and dancers and was serving alcohol to underaged patrons; illegal drugs were being sold at the club; one of the employees was sexually assaulting employees or having them perform sex acts for cash payments; patrons were paying for "illegal dances"; and the club was discriminating against performers based upon their unwillingness to engage in unlawful sexual acts.

**67.**

As a result of Defendant Gray's sexual abuse of June Doe, she suffered severe emotional and mental distress, an increase in anxiety including increased psychosomatic physical symptoms, and an ongoing fear of continued harassment. June Doe has also suffered humiliation, fright, fear and other forms of emotional and psychological distress.

**68.**

While June Doe is incarcerated and an AIC at CCCF, Defendants have a special relationship with June Doe as she is under Defendants' complete control.

/ / /

/ / /

**Page 22 of 41 – CIVIL RIGHTS COMPLAINT**

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Cruel and Unusual Punishment – Sexual Abuse, Conditions of Confinement

### 42 U.S.C § 1983 – Violation of Eighth Amendment

### (Defendant Gray in His Individual Capacity)

**69.**

Plaintiff June Doe realleges each and every allegation of paragraphs 1 through 68 and incorporates those allegations herein by this reference.

**70.**

Sexual abuse of an inmate is deeply offensive to human dignity and is cruel and unusual punishment under the Eighth Amendment. AICs have a clearly established Eighth Amendment right to be free from sexual abuse. Sexual abuse of an inmate also constitutes excessive force and violates the Due Process Clause of the Fourteenth Amendment.

**71.**

Plaintiff is entitled to be held in a safe and humane conditions of confinement throughout her incarceration. Plaintiff is entitled to be free from unwanted and unwarranted sexual abuse. She is entitled to her own personal bodily integrity pursuant to the parameters of the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff is also entitled to be safe and secure from undue and excessive force while in custody.

**72.**

Defendant Gray's actions violated Plaintiff's protected rights, were an excessive intrusion onto her person without just cause, and amounted to deliberate indifference to Plaintiff's protected rights and her own personal safety. Defendant Gray violated the requirements of the Eighth and

**Page 23 of 41 – CIVIL RIGHTS COMPLAINT**

Fourteenth Amendment rights held by Plaintiff through intentional sexual abuse and subjecting her to unsafe and inhumane conditions of confinement.

**73.**

The specific acts of Defendant Gray individually, and those alleged to be deliberately indifferent are more particularly set forth below:

1) Defendant Gray sexually abused and harassed Plaintiff, causing Plaintiff significant mental distress. This abuse included forcing Plaintiff to unclothe and masturbate in front of him for the sole purpose of his personal pleasure. The first time this occurred was in April of 2018. Plaintiff was experiencing severe emotional distress because of being housed in a close supervision cell. Sgt. Gray used Plaintiff's desperate desire to be moved as a bargaining chip, forcing her to perform sexual acts in front of him in order to gain relief from her anxiety.

2) In the months following, Sgt. Gray used his authority as a CO to demand that Plaintiff unclothe and masturbate in front of him at least two more times.

3) The conduct of Defendant Gray amounted to sexual abuse and harassment of an inmate by a staff member as set forth in ODOC Policy 40.1.13.II.G and 40.1.13.II.L.

4) The actions of Defendant Gray were in violation of existing correctional standards, the United States Constitution, and state and federal laws and rules.

/ / /

**Page 24 of 41 – CIVIL RIGHTS COMPLAINT**

Ginger G. Mooney, OSB No. 031261
GINGER G. MOONEY, LLC
1017 May Street, Suite 200, Hood River, OR 97031
Telephone (541) 716-5650 ● Facsimile (503) 389-1585
contact@mooneylaw.org

**74.**

Defendant Gray committed enumerated acts of sexual abuse against Plaintiff. Defendant Gray used his position of power to abuse Plaintiff, a vulnerable person trapped under his supervision. Defendant Gray actions were not only criminal but placed Plaintiff in harm's way.

**75.**

Defendant Gray violated clearly established rights. No reasonable official similarly situated to Defendant Gray could have believed that their conduct was lawful or within the bounds of reasonable discretion. Defendant Gray lacks qualified or statutory immunity from suit or liability. The Defendant's conduct was well defined by law and Defendant knew or reasonably should have known that his conduct fell below the standard prescribed by law herein and was illegal.

**76.**

As a result of the violations of the constitutional standards set forth herein, Plaintiff suffered severe emotional trauma from ongoing abuse, an ongoing fear of continued harassment, humiliation, and a significant deterioration in her mental and emotional state. The acts and omission of Defendant Gray, taken under color of law, constituted deliberate indifference, and violated Plaintiff's right under the Eighth Amendment to the United States Constitution.

**77.**

As a result of these constitutional violations, Plaintiff seeks economic and noneconomic damages in a sum to be more fully determined at trial but no less than $1,000,000.00. Plaintiff seeks punitive damages against all Defendants.

**78.**

Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988, which provides: "In any action or proceeding to enforce a provision

**Page 25 of 41 – CIVIL RIGHTS COMPLAINT**

of sections * * * 1983, * * * of this title, * * *, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, * * *. In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."

## SECOND CLAIM FOR RELIEF

### Violation of Right to Bodily Privacy

### 42 U.S.C § 1983 – Fourteenth Amendment

### (Defendant Gray in His Individual Capacity)

### 79.

Plaintiff realleges each and every allegation of paragraphs 1 through 78 and incorporates those allegations herein by this reference.

### 80.

Plaintiff has a right under the Fourteenth Amendment of the United States Constitution to be free from violations of her bodily privacy.[1] This right is rooted in elementary self-respect and personal dignity. AICs have a clearly established Fourteenth Amendment right to be free from violations of bodily privacy that are imposed without a compelling state interest.[2]

---

[1] *York v. Story,* 324 F.2d 450 (9th Cir. 1963) ("the desire to shield one's unclothed figure from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity"); *Grummett v. Rushen,* 779 F.2d 491, 495 (9th Cir. 1985) (concluding that the right to bodily privacy is held by inmates); *See also Somers v. Thurman,* No. 96-55534, 1997 U.S. App. LEXIS 12272, at 12-14 (9th Cir. Mar. 25, 1997*); Sepulveda v. Ramirez*, 967 F.2d 1413, 1415 (9th Cir. 1992) ("The right to bodily privacy was established in this circuit in 1963. We extended this right to prison inmates in 1985.") (internal citations omitted).
[2] *Grummett v. Rushen*, 779 F.2d 491, 494 (9th Cir. 1985)

**Page 26 of 41 – CIVIL RIGHTS COMPLAINT**

Ginger G. Mooney, OSB No. 031261
GINGER G. MOONEY, LLC
1017 May Street, Suite 200, Hood River, OR 97031
Telephone (541) 716-5650 ● Facsimile (503) 389-1585
contact@mooneylaw.org

**81.**

There was no compelling state interest that justified the conduct of Defendant Gray when he ordered Plaintiff to undress and masturbate in front of him in exchange for being moved out of segregation, nor was there any compelling state interest for his continued sexual harassment and abuse of Plaintiff. Defendant Gray repeatedly violated Plaintiff's right to bodily privacy by forcing her to perform sexual acts in front of him for no reason other than his own pleasure.

**82.**

Defendant Gray acted under color of state law when he forced Plaintiff to undress and masturbate in front of him. At all relevant times he was employed by CCCF. He had the authority over Plaintiff which enabled him to violate her right to bodily privacy because of his position as an officer of the state.

**83.**

Defendant violated clearly established rights. No reasonable official similarly situated to Defendant Gray could have believed that their conduct was lawful or within the bounds of reasonable discretion. The Defendant's conduct was well defined by law and Defendant knew or reasonably should have known that his conduct fell below the standard prescribed by law herein and was illegal. Defendant Gray lacks qualified or statutory immunity from suit or liability.

**84.**

As a result of the violations of the constitutional standards set forth herein, Plaintiff suffered severe emotional trauma from ongoing abuse, an ongoing fear of continued harassment, humiliation, and a significant deterioration in her mental and emotional state. The acts and omission of Defendant Gray, taken under color of law, violated Plaintiff's right under the Fourteenth Amendment to the United States Constitution.

**Page 27 of 41 – CIVIL RIGHTS COMPLAINT**

**85.**

As a result of these constitutional violations, Plaintiff seeks economic and noneconomic damages in a sum to be more fully determined at trial but no less than $1,000,000.00. Plaintiff seeks punitive damages against all Defendants.

**86.**

Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988, which provides: "In any action or proceeding to enforce a provision of sections * * * 1983, * * * of this title, * * *, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, * * *. In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."

### THIRD CLAIM FOR RELIEF

### Cruel and Unusual Punishment – Conditions of Confinement

### Failure to Protect, Negligent Hiring

### (42 U.S.C § 1983 — Violation of Eighth Amendment)

### (All Defendants)

**87.**

Plaintiff realleges each and every allegation of paragraphs 1 through 86 and incorporates those allegations herein by this reference.

**88.**

As a state prisoner, Plaintiff has an Eighth Amendment right to be free from cruel and

**Page 28 of 41 – CIVIL RIGHTS COMPLAINT**

unusual punishments. Defendants are responsible for providing Plaintiff with appropriate conditions of confinement that do not subject Plaintiff to substantial risk of serious harm. Conditions of confinement must comply with applicable law and policies set forth to protect Plaintiff's health and safety.

**89.**

Defendants failed to take reasonable measures to ensure the safety of Plaintiff and other female AICs, even though they knew or should have known of a pattern of sexual abuse and an ongoing risk of sexual abuse within CCCF. In so doing, they disregarded a known and excessive risk to inmate health and safety. Each defendant knew or should have known that the conditions of confinement present at CCCF allowed for correctional staff to sexually abuse AICs.

**90.**

Defendant's persistent failures to address patterns of sexual abuse, as well as their pattern of tolerance for sexual abuse and retaliation toward those that reported it contributed to an environment in which Plaintiff did not feel safe to report the abuse against her by Defendant Gray. This both added Plaintiff's anxiety and prolonged the abuse.

**91.**

CCCF management were aware or should have been aware of Defendant Gray's history of being investigated for sexual abuse, and his involvement in strip clubs where women were subjected to sexual abuse, prior to Defendant Gray being hired at CCCF. By hiring Defendant Gray and by allowing him to continue to supervise women at CCCF after the previous investigations against him, management defendants subjected Plaintiff to an excessive risk of harm. A reasonable person would have known that Defendant Gray, given his history, posed a serious risk to the safety of female AICs and was highly likely to violate their federally protected

**Page 29 of 41 – CIVIL RIGHTS COMPLAINT**

Ginger G. Mooney, OSB No. 031261
GINGER G. MOONEY, LLC
1017 May Street, Suite 200, Hood River, OR 97031
Telephone (541) 716-5650 ● Facsimile (503) 389-1585
contact@mooneylaw.org

rights. By ignoring this risk, Defendants acted with deliberate indifference and failed to ensure Plaintiff's reasonable safety.

**92.**

As a result of the failures of Defendants and ODOC to protect AICs at Coffee Creek, Plaintiff was abused and harassed by Defendant Gray. As a direct and proximate result of the actions described herein, Plaintiff sustained actual damages, suffering repeated sexual abuse which led to mental and emotional trauma, increased fear, anxiety, and shame, and ongoing increased mental health symptoms.

**93.**

The acts and omission of Defendants, taken under color of law, constituted deliberate indifference and violated Plaintiff's right under the Eighth Amendment to the United States Constitution.

**94.**

Plaintiff seeks economic and non-economic damages in a sum to be more fully determined at trial but no less than $1,000,000.00. Plaintiff seeks punitive damages against all Defendants.

**95.**

Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988, which provides: "In any action or proceeding to enforce a provision of sections * * * 1983, * * * of this title, * * *, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, * * *. In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."

**Page 30 of 41 – CIVIL RIGHTS COMPLAINT**

**FOURTH CLAIM FOR RELIEF**

**Eight Amendment**

**Failure to Supervise/Failure to Protect**

**(42 U.S.C §§ 1983, 1985)**

**(Defendants Peters, Reese, Belleque, Steward, Gower, Persson, Meyers, Sage, Gray, Moore, Doe Defendants)**

**96.**

Plaintiff realleges each and every allegation of paragraphs 1 through 95 and incorporates those allegations herein by this reference.

**97.**

The constitutional deprivations suffered by Plaintiff are the proximate and direct cause of a non-interested, indifferent, and willfully ignorant supervisory practice by the named Defendants. Supervisors have a constitutional duty to protect prisoners and to provide them with safe and humane conditions of confinement, including the right to be free from sexual abuse and assault by staff. This duty imposed on supervisory staff includes a duty to maintain a good and constant supervision of male staff supervising female prisoners; and a duty to ensure that AICs are held in constitutionally adequate conditions. The duty is enhanced when the prisoner population is especially vulnerable: if they are physically smaller, and physically weaker.

**98.**

The supervisory staff Defendants were on notice as to the deficiencies in staff training and supervision because of the pattern of sexual abuse that had occurred over the previous decade. In failing to institute more effective training and supervision, they disregarded a known and excessive risk to inmate health and safety.

**Page 31 of 41 – CIVIL RIGHTS COMPLAINT**

**99.**

The supervisory staff Defendants violated constitutional and state and federal rules and laws in the following particulars:

1)  Failure to implement adequate AIC monitoring and managing process after the repeated sexual violations at CCCF noted above;

2)  Failure to provide adequate safeguards to keep AICs from being with staff alone or with inadequate supervision;

3)  Failure to note and respond to evidence of abuse;

4)  Purposeful disregard of prisoners' complaints;

5)  Failure to investigate credible AIC complaints;

6)  Failure by any supervisory staff to stop the sexual abuse and harassment of the Plaintiff in this action;

7)  Toleration and encouragement of an atmosphere of bullying, threats, and retaliation against AICs who came forward with concerns about the sexual behavior of staff;

8)  Toleration and encouragement of staff taking proactive measures to discourage complaints about sexual behaviors; and

9)  Abiding by an informal policy approach that staff members are more important than prisoners and must be protected from any and all complaints by prisoners.

**100.**

As a result of the unconstitutional practice by supervisors—which was promoted, allowed or facilitated within CCCF—female informants, witnesses, or victims of sexual abuse were

**Page 32 of 41 – CIVIL RIGHTS COMPLAINT**

ignored, or retaliated against for filing complaints of sexual abuse.

**101.**

All of the failures noted above contributed to an environment in which Plaintiff did not feel safe to report the abuse against her by Defendant Gray. This prolonged the abuse that Plaintiff was subjected to and added to her fear and anxiety.

**102.**

Defendants failed to adequately train and supervise Defendant Gray and the other individual Defendants before and during the incidents and maintained policies that allowed and condoned the acts and omissions of the correctional staff, and which showed deliberate indifference to the rights of Plaintiff under the Eighth Amendment to the United States Constitution.

**103.**

As a result of the violations of the Constitution set forth herein, Plaintiff seeks economic and noneconomic damages in a sum to be more fully determined at trial but no less than $1,000,000.00. Plaintiff seeks punitive damages against Defendants.

**104.**

Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988, which provides: "In any action or proceeding to enforce a provision of sections * * * 1983, * * * of this title, * * *, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, * * *. In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."

**Page 33 of 41 – CIVIL RIGHTS COMPLAINT**

**FIFTH CLAIM FOR RELIEF**

**Negligence, Supplemental State Claim**

**(All Defendants and State of Oregon)**

**105.**

Plaintiff realleges each and every allegation set forth in paragraphs 1 through 104 and incorporates those allegations set forth herein.

**106.**

Defendants were aware of a rampant problem at CCCF regarding employees of the State of Oregon sexually abusing female inmates. Despite this knowledge, they did nothing to protect individuals like Plaintiff. Defendants' specific failures are set forth in the balance of this claim.

**107.**

The deprivations suffered by Plaintiff are the proximate and direct cause of her psychological harm because of a non-interested, indifferent, and willfully ignorant supervisory practice by the named Defendants.

**108.**

The ODOC supervisors and security staff have a constitutional duty to protect prisoners and to provide them with safe and humane conditions of confinement including the right to be free from sexual abuse and assault by staff.

**109.**

This duty imposed on supervisory and security staff includes an obligation under the law to maintain a good and constant supervision of male staff supervising female prisoners, and a duty to ensure that AICs are held in constitutionally adequate conditions. The duty is enhanced when

**Page 34 of 41 – CIVIL RIGHTS COMPLAINT**

the prisoner population is especially vulnerable: if they are physically smaller, and physically weaker.

**110.**

The supervisory staff Defendants failed and were negligent in the following particulars:

1) Failure to implement adequate AIC monitoring and managing process after the repeated sexual violations at CCCF noted above;

2) Failure to provide adequate safeguards to keep AICs from meeting with staff alone or with inadequate supervision;

3) Failure to note and respond to evidence of abuse;

4) Purposeful disregard of prisoners' complaints;

5) Failure to investigate credible AIC complaints;

6) Failure by any supervisory staff to investigate complaints and obvious signs of abuse;

7) Failure by any supervisory staff to stop the sexual harassment and abuse of the Plaintiff in this action;

8) Toleration and encouragement of an atmosphere of bullying, threats and retaliation against AICs who came forward with concerns about the sexual behavior of staff;

9) Toleration and encouragement of staff taking proactive measures to discourage complaints about sexual behaviors;

10) Abiding by an informal policy approach that staff members are more important than AICs and must be protected from any and all complaints by AICs;

**Page 35 of 41 – CIVIL RIGHTS COMPLAINT**

11) Willfully ignoring clear violations of restrictions on contact and behavior permitted between staff and AICs;

12) Willfully ignoring clear signs of "grooming" and sexualized behavior by staff toward AICs; and

13) Failing to implement adequate AIC monitoring and managing process after the repeated sexual violations at CCCF noted above.

**111.**

All of the failures noted above contributed to an environment in which Plaintiff did not feel safe to report the abuse against her by Defendant Gray. This both prolonged the abuse and added to the fear and anxiety experienced by Plaintiff.

**112.**

The statute and administrative rules provide for conduct and behavior expected by corrections staff towards AICs. Included in the expected behavior is a zero tolerance for sexual contact between staff and AICs, zero tolerance for sexual battery between staff and AICs, proper training of staff to detect grooming behaviors, and proper training to staff to detect, identify and stop sexual misconduct by staff towards AICs.

**113.**

The failures by the individual Defendants and the State of Oregon to comply with known and existing standards of behavior and conduct were the direct cause of the sexual battery suffered by Plaintiff. The failure to adhere to known expected standards was a deviation from the existing standard of care and it was foreseeable that Defendant Gray would perpetrate sexual abuse and harassment against Plaintiff.

/ / /

**Page 36 of 41 – CIVIL RIGHTS COMPLAINT**

**114.**

As a result of the negligence and violations of the standard of care by the Defendants and the State of Oregon, Plaintiff was sexually abused, sexually harassed, and suffered significant emotional damages to her non-economic loss of no less than $1,000,000.00. Plaintiff may require extensive future mental health treatment for her mental health conditions brought on by the sexual abuse in an amount to be calculated at trial by no less than $1,000,000.00.

**115.**

Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988, which provides: "In any action or proceeding to enforce a provision of sections * * * 1983, * * * of this title, * * *, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, * * *. In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."

**SIXTH CLAIM FOR RELIEF**

**Intentional Infliction of Emotional Distress**

***Respondeat Superior***

**(All defendants, and State of Oregon)**

**116.**

Plaintiff realleges each and every allegation set forth in paragraphs 1 through 115 and incorporates those allegations set forth herein.

/ / /

**Page 37 of 41 – CIVIL RIGHTS COMPLAINT**

**117.**

An employer is responsible for harm caused by the wrongful conduct of its employees while acting within the scope of their employment. Pursuant to ORS 30.265, every public body is subject to civil action for its torts and those of its officers, employees and agents acting within the scope of their employment or duties.

**118.**

While acting in the course and scope of his agency for Defendants Oregon Department of Corrections and the State of Oregon, Defendant Gray sexually harassed, and sexually abused Plaintiff as described in paragraphs 51-61.

**119.**

The sexual abuse and harassment that Defendant Gray subjected Plaintiff to was certain to result in severe mental and emotional distress.

**120.**

As a consequence of Defendant Gray's sexual abuse and harassment, Plaintiff did in fact suffer severe emotional distress, including fear, humiliation, trauma, increased anxiety, exacerbated mental health symptoms, and an increase in painful, chronic psychosomatic GI symptoms.

**121.**

The sexual abuse perpetrated by Defendant Gray is the proximate and actual cause of Plaintiff's psychological and related physical harm.

**122.**

The acts of Defendant Gray fell well outside the boundaries of socially tolerable conduct. Defendant Gray used his position of authority to coerce a powerless, vulnerable person into

**Page 38 of 41 – CIVIL RIGHTS COMPLAINT**

performing sexual acts in front of him for his pleasure. He did this when Plaintiff was in the midst of a severe mental health crisis and in need of immediate help. He conditioned his assistance on her willingness to perform sexual acts in front of him. He did all of this while charged with Plaintiff's care and safety.

### 123.

At all times herein mentioned, Defendant Gray was acting within the scope of his employment by the State of Oregon and the Oregon Department of Corrections and using the legal and practical authority he had in that capacity. Defendant State of Oregon is responsible for the harm because Defendant Gray was acting as an employee of the State when the incidents occurred.

### 124.

As a result of these constitutional violations, Plaintiff seeks noneconomic damages in a sum to be more fully determined at trial but no less than $1,000,000.00 Plaintiff seeks punitive damages against all Defendants. Plaintiff requests that the Court award economic damages for future psychological or psychiatric treatment and services, to treat her for the mental and emotional abuse in an amount of $1,000,000.00.

### 125.

Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988, which provides: "In any action or proceeding to enforce a provision of sections * * * 1983, * * * of this title, * * *, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, * * *. In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."

**Page 39 of 41 – CIVIL RIGHTS COMPLAINT**

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Court will enter a Judgment in her favor, and against Defendants, as follows:

A.    Finding that any or all Defendants violated her protected constitutional rights;

B.    Findings that supervisors failed to properly supervise subordinate staff which resulted in the opportunities for Defendant Gray to sexually abuse and harass Plaintiff;

C.    Failure to properly train staff to detect sexual behavior and grooming behavior by staff;

D.    Findings that as a result of the constitutional violations alleged herein Plaintiff has sustained harm and damages in an amount no less than $1,000,000.00;

E.    Findings that the cause of the constitutional violations is intentional or so grossly and deliberately indifferent to justify the award of punitive damages against each named Defendant in a sum no less than $1,000,000.00 each;

F.    Findings that Plaintiff was subject to sexual abuse and harassment as a result of the actions of an individual in the employment of the State of Oregon;

G.    Findings that Plaintiff was held in unlawful conditions of confinement;

H.    Finding of future damages in the amount of $750,000.00;

**Page 40 of 41 – CIVIL RIGHTS COMPLAINT**

Ginger G. Mooney, OSB No. 031261
GINGER G. MOONEY, LLC
1017 May Street, Suite 200, Hood River, OR 97031
Telephone (541) 716-5650 ● Facsimile (503) 389-1585
contact@mooneylaw.org

I.     For an award of economic and noneconomic damages in an amount to be

       proven at trial, but not less than $500,000.00;

J.     For an award of punitive damages in an amount to be proven at trial;

K.     For Plaintiff's reasonable attorney fees, costs, and disbursements; and

L.     For such other relief as the law permits and justice requires.


DATED this 3rd day of December, 2024.

                                  Respectfully submitted,

                                  /s/ Ginger G. Mooney
                                  Ginger G. Mooney, OSB No. 031261
                                  Attorney for Plaintiff


**Page 41 of 41 – CIVIL RIGHTS COMPLAINT**