Jon W. Monson, OSB No. 102650
jmonson@cablehuston.com
Brian S. Epley, OSB No. 204790
bepley@cablehuston.com
James T. Plunkett, OSB No. 242187
jplunkett@cablehuston.com
CABLE HUSTON LLP
1455 SW Broadway, Suite 1500
Portland, Oregon 97201
Tele: (503) 224-3092
Fax: (503) 224-3167

*Attorneys for Defendant Levi Gray*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JUNE DOE,<br><br>    Plaintiff,<br><br>v.<br><br>MIKE REESE, Director Oregon Department of Corrections (ODOC); COLETTE PETERS, former Director Oregon Department of Corrections (ODOC); BRIAN BELLEQUE, ODOC Deputy Director (former); HEIDI STEWARD, ODOC Deputy Director; MICHAEL GOWER, ODOC Assistant Director of Operations (former); ROB PERSSON, ODOC Assistant Director of Operations, ODOC Westside Institutions Administrator (former), Superintendent Coffee Creek Correctional Facility (CCCF) (former); PAULA MYERS, Superintendent Coffee Creek Correctional Facility (CCCF) (former); ERICKA SAGE, ODOC PREA Administrator; LEVI D. GRAY, Corrections Officer at CCCF (former); KELLEE MOORE, ODOC | Case No. 3:24-cv-02011-AB<br><br>**DEFENDANT LEVI GRAY'S MOTION TO DISMISS** |

Page 1 – DEFENDANT LEVI GRAY'S MOTION TO DISMISS

Behavioral Health Counselor, JOHN/JANE DOE, ODOC Behavioral Health Counselors and other employees; OREGON DEPARTMENT OF CORRECTIONS and the STATE OF OREGON, each sued in their individual and official capacities,

        Defendants.

## LR 7-1 CERTIFICATION

Defendant certifies pursuant to Local Rule 7-1(a) that the parties conferred in a good faith effort to resolve the dispute and have been unable to do so.

## MOTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Levi Gray ("Gray") respectfully moves the Court for an order dismissing Plaintiff's Complaint as to the claims asserted against Levi Gray.

## LEGAL MEMORANDUM

### I. INTRODUCTION

Plaintiff alleges that Gray sexually harassed her in April 2018 while she was incarcerated at Coffee Creek Correctional Facility ("CCCF"). Plaintiff knew at the time of the alleged harassment that Gray's supposed misconduct was improper and that it had caused her to suffer emotional distress. Plaintiff did not report the alleged misconduct to prison officials. Nor did she file a lawsuit within the applicable two-year statute of limitations. She waited more than six years before filing this lawsuit in December 2024. Plaintiff's own allegations demonstrate that her claims are time-barred. Plaintiff's untimely claims must therefore be dismissed. Separate and apart from that deficiency, qualified immunity precludes Plaintiff from asserting her Eighth Amendment claim. The Court should therefore dismiss Plaintiff's First, Second, and Sixth claims against Gray.[1]

---

[1] Plaintiff confirmed during the conferral process that she will be dismissing her Third, Fourth, and Fifth Claims for Relief as against Gray. This includes the state law negligence claim (Fifth Claim for Relief). Gray therefore focuses this brief on Plaintiff's remaining claims.

Page 2 – DEFENDANT LEVI GRAY'S MOTION TO DISMISS

## II. BACKGROUND[2]

Defendant Gray was a Correctional Officer Sergeant employed by the Oregon Department of Corrections ("ODOC") starting in January 2010. (Compl. ¶ 15.) While employed by ODOC, Gray worked at CCCF from May 4, 2012 to May 24, 2023. (*Id*.) Plaintiff June Doe entered CCCF as an adult-in-custody ("AIC") in June 2014. (*Id*. ¶ 50.) On April 28, 2018, June Doe allegedly told Gray that she was experiencing severe anxiety and wanted to be moved to a different cell. (Compl. ¶ 55.) Gray allegedly implied that he would help Plaintiff be moved out of segregation if she masturbated in front of him in view of the cell window. (*Id*. ¶¶ 55–56.) Plaintiff then did so against her will:

> At first, June Doe asked, "***Are you serious***?" Sgt. Gray responded, "Do you want to move?" ***Desperate to be out of the close supervision cell***, June Doe removed her pants and did as he asked.

(*Id*. ¶ 56) (emphasis added). She claims similar incidents occurred twice more in the following months. (*Id*. ¶¶ 58, 73(2).) Plaintiff recognized at the time that the alleged incidents were wrong because she considered reporting them to prison officials. (*Id*. ¶ 20) (Plaintiff "feared that she would get in trouble if she made a report"). However, she ultimately decided not to report the incidents. (*Id*.)

Plaintiff recognized in 2018 that she was suffering mental distress from Gray asking her to commit unwanted sexual acts. (Compl. ¶ 59.) "At the time of the [April 2018] incident, Plaintiff . . . feared that she would get in trouble if she made a report" against Gray." (*Id*. ¶ 20.) Plaintiff alleges that "[i]n the following months, Sgt. Gray used his authority as a CO to demand that Plaintiff unclothe and masturbate in front of him at least two more times." (*Id*. ¶ 73(2).) Plaintiff asserts that during that 2018 period, she "suffered severe emotional trauma from *ongoing* abuse, [and] an *ongoing* fear of continued harassment, humiliation, and a significant deterioration in her mental and emotional state." (*Id*. ¶ 76.) Thus, according to her own

---

[2] For purposes of this motion to dismiss only, Defendant assumes the truth of Plaintiff's allegations as required by Fed. R. Civ. P. 12.

Page 2 – DEFENDANT LEVI GRAY'S MOTION TO DISMISS

complaint, Plaintiff knew she was experiencing mental distress as the abuse was allegedly ongoing during 2018.

Plaintiff now brings two Section 1983 claims against Gray, including an Eighth Amendment claim for cruel and unusual punishment and a Fourteenth Amendment claim for violations of bodily privacy. (*See* Compl. ¶¶ 69–88.) Plaintiff also asserts one state-law claim against Gray: intentional infliction of emotional distress. (*Id.* ¶¶ 116–25.)

## III. LEGAL STANDARDS

A motion to dismiss for failure to state a claim may be granted where there is no cognizable legal theory supporting the claim or "when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief." *Andrade-Tafolla v. United States*, 536 F. Supp. 3d 764, 770 (D. Or. 2021). "In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party." *Id*. "To be entitled to a presumption of truth, allegations in a complaint 'may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.'" *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). While the court must draw all reasonable inferences from the factual allegations in plaintiff's favor, the "court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Andrade-Tafolla*, 536 F. Supp. at 770-71 (citing *Starr*, 652 F.3d at 1216). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

## IV. ARGUMENT

### A. <u>Plaintiff's Section 1983 Claims Are Time Barred.</u>

Plaintiff's federal claims are subject to a two-year statute of limitation. "When, as here, a federal civil rights statute does not include its own statute of limitations, federal courts borrow the forum state's limitations period for personal injury torts." *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). "[A] state's residual personal injury statute of limitations, ***not a range of specialized statutes of limitations***, should be applied to § 1983 claims." *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 579 (9th Cir. 2012) (emphasis added). Oregon's residual personal injury state is ORS 12.110(1), which establishes a two-year statute of limitations. *See Cooper v. City of Ashland*, 871 F.2d 104, 105 (9th Cir. 1989) ("Oregon's two-year statute of limitations for personal injury actions applies to actions under 42 U.S.C. § 1983.").

A claim accrues when the plaintiff knew or in the exercise of reasonable diligence should have known of her injury and its cause. "Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues." *Samuelson v. Jewell Sch. Dist. 8*, 725 F. Supp. 3d 1195,1218 (2024) (quoting *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001)). Under the federal discovery rule, a cause of action accrues "when the plaintiff knows or has reason to know of the actual injury" and the cause of the injury; not when the plaintiff suspects a "legal wrong." *Lukovsky*, 535 F.3d at 1051; *Doe v. Cnty. of Josephine*, No. 1:12–cv–2080–CL, 2015 WL 2412181, at *2 (D. Or. May 18, 2015), *aff'd on other grounds sub nom. Doe, 7 v. Josephine Cnty.*, 697 F. App'x 567 (9th Cir. 2017); *Castillo v. United States*, No. C17-0119-JCC, 2018 WL 5619028, at *2 (W.D. Wash. Oct. 30, 2018) (noting that a "claim accrues regardless of whether the plaintiff understands that they have a legal right to seek redress for that injury") (citing *United States v. Kubrick,* 444 U.S. 111, 122 (1979)). A plaintiff need not be aware of the full extent of the harm for her cause of action to accrue. *Wallace v.*

*Kato*, 549 U.S. 384, 391 (2007) (a "cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable"); *Cnty. of Josephine*, No. 1:12-CV-2080-CL, 2015 WL 2412181, at *3 (holding that sexual abuse claims were time-barred where the plaintiffs were aware of harm as children but became aware of additional psychological symptoms as adults).

Plaintiff's cause of action accrued at the time of the alleged misconduct. On April 28, 2018, June Doe told Gray she was suffering severe anxiety and expressed her desire to be moved to a different cell. (Compl. ¶ 55.) After asking Plaintiff what she would do to be moved, Gray allegedly instructed her to masturbate in front of him. (*Id*. ¶¶ 55–56.) Plaintiff then did so against her will:

> At first, June Doe asked, "***Are you serious***?" Sgt. Gray responded, "Do you want to move?" ***Desperate to be out of the close supervision cell***, June Doe removed her pants and did as he asked.

(*Id.* ¶ 56) (emphasis added). Plaintiff clearly knew the alleged incident was wrong because she considered reporting it at the time. (*Id*. ¶ 20) (Plaintiff "feared that she would get in trouble if she made a report"). She made the decision not to report the incident out of fear she might somehow get in trouble for doing so. (*Id.*) Based on these factual allegations, Plaintiff knew she had been asked to commit unwanted sexual acts against her will by Defendant Gray. She also knew that she was suffering mental and physical harm immediately following the alleged incidents. (*Id*. ¶ 59.) "At this point, the plaintiff[] knew [she] had been injured and by whom, even if at that point in time the plaintiff[] did not know of the legal injury," *i.e.*, that Gray's conduct constituted actionable sexual abuse. *See Lukovsky*, 535 F.3d at 1051. Plaintiff's cause of action therefore accrued in April 2018.

Plaintiff tries to circumvent the statute of limitations by claiming she did not recognize at the time that Gray's alleged actions constituted sexual abuse for which she had a cognizable claim to pursue. (Compl. ¶ 61–62.) But federal law is clear that a plaintiff's claim accrues even

if a plaintiff does not realize she has a legal cause of action based on conduct she is aware of. As the Court explained in *United States v. Kubrick,* 444 U.S. 111, 122 (1979), "ignorance of [one's] legal rights" does not delay accrual of a claim. A person aware that they had been hurt and by whom has sufficient information to pursue their rights. "There are others who can tell him if he has been wronged, and he need only ask." *Id*. at 122. Here, Plaintiff claims she only learned that what occurred might constitute actionable sexual abuse in 2024 after speaking with her boyfriend and ODOC's Behavioral Health Services ("BHS") staff. (Compl. ¶ 61–62.) But Plaintiff could have just as easily learned that same information in 2018 by consulting with BHS staff, doctors, counselors, or lawyers at that time. As the *Kubrick* Court put it, she "need only [have] ask[ed]" in 2018, as she later did in 2024. 444 U.S. at 122; *see also id.* at 123 ("A plaintiff such as Kubrick, armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute…."). Plaintiff's Section 1983 claims accrued in 2018 and became time-barred two years later in 2020. She did not file her complaint until 2024. The claims must therefore be dismissed.

### B. Plaintiff's State-law Claim Is Also Time Barred.

Plaintiff's intentional infliction of emotion distress ("IIED") claim likewise accrued in 2018 at the time of the alleged misconduct. (Compl. ¶¶ 116–25.) Whereas federal law controls accrual of Plaintiff's Section 1983 claims, this state-law claim must be analyzed under Oregon's discovery rule. Under Oregon law, the statute of limitations does not begin to run until the "plaintiff has [had] a reasonable opportunity to discover [her] injury and the identity of the party responsible for that injury." *Adams v. Oregon State Police,* 289 Or. 233, 239 (1980). Here, it is undisputed that Plaintiff knew from the start that Gray was the party responsible for the alleged misconduct. Plaintiff simply claims that she did not discover she was injured until 2024—six years after the alleged misconduct.

An "injury" is a legally cognizable harm comprised of three elements: (1) harm; (2) causation; and (3) tortious conduct. *Gaston v. Parsons*, 318 Or. 247, 255 (1994). The plaintiff

need not know with "certainty that each particular element exists." *Id.* The discovery rule is merely designed to "give plaintiffs a *reasonable opportunity* to become aware of their claim." *Id.* at 256 (emphases added). Actual knowledge that each element is satisfied is not required. *Id.* The accrual period is therefore triggered when "the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the three elements (harm, causation, and tortious conduct) exist." *Id.* (emphases added).

Importantly, this is an objective test. *Id.* The "relevant inquiry is how a *reasonable person of ordinary prudence* would have acted in the same or similar situation." *Id.* (emphasis added). A "plaintiff's failure to make a further inquiry if a reasonable person would have done so" therefore dooms the claim. *Id.* "The discovery rule does not protect those who sleep on their rights, but only those who, in exercising the diligence expected of a reasonable person, are unaware that they have suffered legally cognizable harm." *Id.* Here, Plaintiff knew or should have known that there was a "substantial possibility that each of the three elements (harm, causation, and tortious conduct)" existed in 2018. *Id.*

**(1)    Harm.**

Plaintiff recognized in 2018 that she had been harmed by Gray's alleged misconduct. "At the time of the incident, Plaintiff . . . feared that she would get in trouble if she made a report" against Gray." (Compl. ¶ 20.) She therefore knew that Gray's alleged misconduct was wrong and that the alleged misconduct was causing her to suffer emotional distress. After the alleged April 2018 incident, Plaintiff further alleges that "[i]n the months following, Sgt. Gray used his authority as a CO to demand that Plaintiff unclothe and masturbate in front of him at least two more times." (*Id.* ¶ 73(2).) Plaintiff asserts that during that time in 2018, she "suffered severe emotional trauma from *ongoing* abuse, [and] an *ongoing* fear of continued harassment, humiliation, and a significant deterioration in her mental and emotional state." (*Id.* ¶ 84.) Thus, according to her own complaint, Plaintiff knew she was experiencing ongoing mental distress as the harassment was allegedly occurring in 2018.

Page 7 – DEFENDANT LEVI GRAY'S MOTION TO DISMISS

At minimum, a reasonable person of ordinary prudence would have known that Plaintiff was harmed by Gray's alleged misconduct in 2018. Plaintiff alleges that she was forced to disrobe and masturbate in front of a stranger against her will. She further claims that Gray took advantage of the power imbalance of the guard-prisoner relationship and "used his position of authority to coerce a powerless, vulnerable person into performing sexual acts in front of him for his pleasure." (Compl. ¶ 122.) On top of that, she alleges that Gray effectively held her hostage by predicating his willingness to help alleviate her "severe mental health crisis" on her performing non-consensual sex acts. (*Id.*) A reasonably prudent person would know there was a substantial possibility that being forced to engage in such conduct under those circumstances caused emotional and/or psychological harm.

### (2) Causation.

As laid out above, Plaintiff alleges that Gray sexually harassed her during 2018, and that she knew that the harassment was causing her mental distress as it was "ongoing" in 2018. Plaintiff therefore knew in 2018 that Gray's alleged misconduct caused her to suffer emotional distress.

At minimum, a reasonable person of ordinary prudence would have known there was a substantial possibility that Gray's alleged misconduct would cause her to suffer emotional distress. Plaintiff's Complaint confirms that to be true. "The sexual abuse and harassment that Defendant Gray subjected Plaintiff to was *certain to result* in severe mental and emotional distress." (Compl. ¶ 119) (emphasis added).

### (3) Tortious Conduct.

Finally, the Court must assess whether Plaintiff knew or should have known that there was a substantial possibility that Gray's alleged misconduct was tortious in nature. *Gaston*, 318 Or. at 256. This requires the Court to evaluate the particular tort claim Plaintiff asserts. *See Doe 1 v. Lake Oswego Sch. Dist.*, 353 Or. 321, 329–30, 297 P.3d 1287 (2013). A plaintiff must adequately allege three elements to pursue an IIED claim under Oregon law: (1) the defendant "intended to inflict severe emotional distress on the plaintiff," (2) the defendant's acts were the

"cause of the plaintiff's severe emotional distress"; and (3) the defendant's acts constituted an "extraordinary transgression of the bounds of socially tolerable conduct." *McGanty v. Staudenraus*, 321 Or. 532, 543, 901 P.2d 841 (1995) (citing *Sheets v. Knight*, 308 Or. 220, 236, 779 P.2d 1000 (1989)). The Complaint demonstrates that Plaintiff knew or should have known that there was a substantial possibility she had an IIED claim against Gray in 2018.

### a. Plaintiff Alleges that Gray Intended to Inflict Severe Emotional Distress in 2018.

"The intent element of the claim does not require a malicious motive or a purposeful design to inflict emotional distress on the plaintiff; it is satisfied if a defendant either 'desires to inflict severe emotional distress, or knows that such distress is certain, or substantially certain, to result from his conduct.'" *Delaney v. Clifton*, 180 Or. App. 119, 132, 41 P.3d 1099 (2002). Plaintiff's allegations clearly meet this standard. She claims that Gray forced her to remove her clothes and masturbate in front of him against her will. She not only claims that Gray exploited the power imbalance to "use[] his position of authority to coerce a powerless, vulnerable person into performing sexual acts in front of him for his pleasure," she also alleges that Gray leveraged her "severe mental health crisis" to extract non-consensual sexual acts. (Compl. ¶ 122.) A reasonably prudent person would know that it was substantially certain a person like Plaintiff would experience severe emotional distress under these circumstances. *Gaston*, 318 Or. at 256 (the "relevant inquiry is how a reasonable person of ordinary prudence would have acted in the same or similar situation"). Indeed, Plaintiff asserts exactly that in her Complaint: "[t]he sexual abuse and harassment that Defendant Gray subjected Plaintiff to was *certain* to result in severe mental and emotional distress." (Compl. ¶ 119) (emphasis added).

### b. Plaintiff Alleges Gray Caused Her to Suffer Severe Emotional Distress in 2018.

As discussed above, Plaintiff's Complaint demonstrates that she knew Gray's alleged misconduct had caused her to suffer severe emotional distress in 2018. *Supra* § IV.B(1)–(2). According to the Complaint, "[a]t the time of the [April 2018] incident, Plaintiff . . . feared that she would get in trouble if she made a report" against Gray." (Compl. ¶ 20.) After alleging that

Page 9 – DEFENDANT LEVI GRAY'S MOTION TO DISMISS

Gray harassed her twice more over the next few months, Plaintiff alleges that she "suffered *severe emotional trauma* from [that] *ongoing* abuse . . . and a significant deterioration in her mental and emotional state." (*Id.* ¶ 84) (emphasis added). Thus, Plaintiff knew in 2018 that Gray's alleged misconduct had caused her to suffer severe emotional distress.

         **c.**      **Plaintiff Alleges that Gray's Alleged Conduct in 2018 Exceeded The Bounds of Socially Tolerable Conduct.**

Plaintiff claims that she did not subjectively "understand that Sgt. Gray's behavior was sexual abuse" until her boyfriend educated her six years later. (Compl. ¶¶ 20, 61.)[3] But that is not the relevant inquiry. The relevant question is whether a reasonably prudent person would have understood in 2018 that there was a substantial possibility that Gray's conduct exceeded the "bounds of socially tolerable conduct." *Gaston*, 318 Or. at 256 (the "relevant inquiry is how a reasonable person of ordinary prudence would have acted in the same or similar situation").

"Determining whether the alleged conduct is an extraordinary transgression of the bounds of socially tolerable conduct is initially a question of law." *Delaney*, 180 Or. App. at 129. Courts "consider whether the offensiveness of the conduct 'exceeds any reasonable limit of social toleration[,]' which is 'a judgment of social standards rather than of specific occurrences.'" *Rosenthal v. Erven*, 172 Or. App. 20, 23, 17 P.3d 558 (2001) (quoting *Hall v. The May Dept. Stores*, 292 Or. 131, 137, 637 P.2d 126 (1981)). Oregon courts have described several circumstances that help guide this offensiveness determination. *Delaney*, 180 Or. App. at 130 (quoting *Rosenthal*, 172 Or. App. at 23–24).

First, the relationship between the parties has "particular bearing on potential characterization of the conduct as extreme or outrageous." *Id.* That is because a "defendant's position or role *vis-à-vis* a plaintiff may be one that imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock than would be true in arm's-length encounters among strangers." *Id.* Plaintiff's Complaint stresses the unique power imbalance

---

[3] The Complaint inconsistently claims that Plaintiff discovered the abuse in either 2023 or 2024. (Compl. ¶¶ 20, 61.) During the conferral call, Plaintiff's counsel confirmed that this date was actually in 2024.

that exists among corrections officers and inmates, and notes that corrections officers like Gray are "charged with Plaintiff's care and safety." (Compl. ¶ 122). She further asserts that prison staff have a "constitutional duty to protect prisoners and to provide them with safe and humane conditions of confinement including the right to be free from sexual abuse and assault by staff." (*Id.* ¶ 108.) These allegations epitomize the type of relationship where misconduct is naturally deemed more "extreme or outrageous."

Courts also recognize that a defendant's violation of a "professional obligation to [the] plaintiff" is also instructive to this analysis. *See Rockhill v. Pollard*, 259 Or. 54, 60, 485 P.2d 28 (1971) (stating that the particular relationship between the parties was an important factor, and noting that the defendant physician was "under a professional obligation to plaintiff—they were not dealing at arm's length"). Plaintiff's Complaint details federal law and ODOC policies that impose a duty on prison staff to refrain from sexually abusing or harassing inmates. (Compl. ¶¶ 30–36.) She alleges that Gray breached that professional obligation with respect to her. (*E.g., id.* ¶ 73(3)–(4).) Plaintiff's allegations thus confirm the parties' relationship increased the gravity of the alleged misconduct.

Second, where the "conduct was undertaken for an ulterior purpose or to take advantage of an unusually vulnerable individual," it is more likely to constitute actionable misconduct. *Delaney*, 180 Or. App. at 130. Here, Plaintiff alleges that shew was a "powerless, vulnerable person," and that Gray coerced her into performing non-consensual sex acts purely for his own sexual gratification. (Compl. ¶ 122.) She also alleges that she was especially vulnerable because she was "in the midst of a mental health crisis and in need of immediate help," and that Gray exploited her desperation. (*Id.*) These allegations again confirm that Plaintiff knew the tortious nature of the alleged misconduct.

In short, these factors demonstrate that Plaintiff knew or should have known in 2018 that Gray's alleged misconduct transgressed the bounds of socially tolerable conduct. Indeed, Plaintiff herself immediately considered reporting the incident but ultimately chose not to. (Compl. ¶ 20.)

### C. Plaintiff's First Claim Must Be Dismissed Based on Qualified Immunity.

Plaintiff's First Claim for Relief asserts an Eighth Amendment violation. In addition to being time-barred, *supe*, this claim is barred by qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Thus, "[w]hen properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id*. (internal quotation marks omitted). Because qualified immunity is an "*immunity from suit* rather than a mere defense to liability[,] . . . it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) (internal quotation marks omitted) (emphasis in original); *see also Harlow*, 457 U.S. at 817–18 (cautioning against "subject[ing] government officials either to the costs of trial or to the burdens of broad-reaching discovery"). For this reason, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

When evaluating whether a defendant is entitled to qualified immunity, a "court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 967–68 (9th Cir. 2021). Either prong may be addressed first. *Id.* at 968. And if the answer to either prong is "no," then the state actor is immune from suit. *Id.* Plaintiff cannot establish that Gray violated a right that was clearly established at the time of his alleged misconduct.

For a right to be clearly established, the contours of the right must be "sufficiently clear" that a reasonable official would understand that they are violating that right. *al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus, "existing precedent

Page 12 – DEFENDANT LEVI GRAY'S MOTION TO DISMISS

must have placed the . . . constitutional question *beyond debate*." *al-Kidd,* 563 U.S. at 741 (emphasis added). The rule must be "settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (cleaned up); *see also Gordon*, 6 F.4th at 969–70 (applying this standard to an inadequate medical care claim). Whether a constitutional right is "clearly established" is purely a question of law for the court to decide. *Gordon*, 6 F.4th at 968. And Plaintiff bears the burden of proving the rights allegedly violated were clearly established. *Id.* at 969.

The "clearly established" requirement is meant to ensure that the "'contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 741 (cleaned up). It is not enough that an official's conduct is inappropriate, unacceptable, or even morally repugnant. *Benjamin v. Stevens Cnty.*, 839 Fed. Appx. 100, 101 (9th Cir. 2020). Nor is it sufficient that the official's conduct is sufficient to trigger civil liability under statutory or common law claims. The government official must be on notice that the action they intend to take will clearly and unquestionably violate a person's Eighth Amendment rights under preexisting case law. *Wesby*, 583 U.S. at 63–64; *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 674 (9th Cir. 2021).

The Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 613 (2015). "Otherwise, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). To the contrary, the "dispositive question is whether the violative nature of ***particular conduct*** is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *al-Kidd*, 563 U.S. at 742) (internal quotation marks omitted) (emphasis added). The clearly established law must therefore be "***particularized to the facts of the case***." *Darmody v. Clatsop Cnty.*, No. 3:21-CV-01261-IM, 2024 WL 896348, at *3 (D. Or. Mar. 1, 2024) (quoting *White*, 580 U.S. at 79) (internal quotation marks omitted) (emphasis added). Here, Plaintiff alleges that Gray sexually harassed

Page 13 – DEFENDANT LEVI GRAY'S MOTION TO DISMISS

Plaintiff by asking her to masturbate within his view through a cell window. Plaintiff therefore bears the burden of proving existing case law

Here, Plaintiff cannot identify "controlling authority" or "robust consensus of persuasive authority" that existed in 2018 establishing that Gray's alleged conduct violated Plaintiff's Eighth Amendment rights. The Ninth Circuit has held that sexual harassment by a prison guard which does not involve physical touch does not violate the Eighth Amendment. For example, in *Austin v. Terhune*, 367 F.3d 1167 (9th Cir. 2004), a guard was in an "elevated, glass-enclosed control booth when he exposed himself" to an inmate for 30 to 40 seconds. *Id.* at 1171–72. After noting that the guard "never physically touched [the inmate]," the Ninth Circuit affirmed the district court's conclusion that the incident "was not sufficiently serious to constitute an Eighth Amendment violation." *Id.* at 1172. Indeed, the Ninth Circuit's Manual of Model Civil Jury Instructions states that "[a]llegations of sexual harassment that do not involve touching have routinely been found 'not sufficiently serious' to sustain an Eighth Amendment claim." *See* Manual of Model Civil Jury Instructions for the Ninth Circuit, Committee on Model Jury Instructions, Ninth Circuit, Cmts. to § 9.26A (rev. Nov. 2024).

Courts within the Ninth Circuit have repeatedly rejected Eighth Amendment claims involving analogous circumstances. The aforementioned decision in *Austin* confirms that alleged sexual harassment without physical touch does not constitute an Eighth Amendment violation. District courts within the Ninth Circuit adhere to that holding. *See, e.g., Bennett v. Palares*, No. 1:24-cv-00591-JLT-BAM (PC), 2025 WL 405572, at *4 (E.D. Cal. Feb. 5, 2025) ("Allegations of sexual harassment that do not involve touching have routinely been found 'not sufficiently serious' to sustain an Eighth Amendment claim.") (quoting *Austin*, 367 F.3d at 1172); *Kotz v. Core*, No. 5:23-cv-00655-FWS-SSC, 2025 WL 1135029, at *4 (C.D. Cal. Mar. 21, 2025) ("[T]he Court has not found a case from the Supreme Court or the Ninth Circuit finding an Eighth Amendment violation solely based on viewing or photographing an inmate's naked body.")

/ / /

Courts within the Ninth Circuit consistently hold that sexual harassment stemming from words alone, without any physical abuse, does not violate the Eighth Amendment. The court in *Minifield v. Butikofer*, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004), explained that sexual harassment involving "allegations of physical assault" is actionable whereas "sexual harassment that involves verbal abuse" is not. *Accord Foust v. Hyde*, No. 6:21-cv-01440-MTK, 2025 WL 775795 (D. Or. Mar. 10, 2025) ("Ninth Circuit case law is clear that verbal harassment and even threats are insufficient to establish an Eighth Amendment violation."). Here, Plaintiff does not allege that Gray physically touched her. She does not even allege he entered her cell in conjunction with the alleged misconduct. Instead, she alleges that Gray verbally abused her from outside her cell by asking her to masturbate within view from the cell window. (Compl. ¶¶ 55–56.) She also alleges that on two more occasions, Gray "raised his eyes suggestively," which Plaintiff subjectively interpreted as a demand for her to repeat the same display. (*Id.* ¶ 58.) Gray's alleged misconduct is therefore the verbal and non-verbal "requests" for Plaintiff to engage in certain behavior. But case law is clear that such verbal harassment—however morally objectionable—does not violate a "clearly established" right under the Eighth Amendment.

At minimum, these cases show that existing precedent did not "place[] the . . . constitutional question beyond debate," *al-Kidd,* 563 U.S. at 741, nor was there a "robust consensus" of persuasive authority clearly establishing the unconstitutional nature of Gray's alleged actions. *Wesby*, 583 U.S. at 63. The Court must therefore dismiss Plaintiff's First Claim for Relief with prejudice based on qualified immunity.

## V.  CONCLUSION

For the reasons stated above, Gray asks this Court to grant his Motion and dismiss Plaintiff's § 1983 and supplemental state law claims against him with prejudice.

<u>**LR 7-2 CERTIFICATION**</u>

This brief complies with the applicable word count limitation under LR 7-2(b), because it contains 5,343 words, including headings, footnotes, and quotations, but excluding the caption,

table of contents, table of cases and authorities, signature blocks, exhibits, and any certificates of counsel.

DATED: August 11, 2025.

CABLE HUSTON LLP

*s/* Brian S. Epley
Brian S. Epley, OSB No. 204790
bepley@cablehuston.com
Jon W. Monson, OSB No. 102650
jmonson@cablehuston.com
James T. Plunkett, OSB No. 242187
jplunkett@cablehuston.com
1455 SW Broadway, Suite 1500
Portland, Oregon 97201
Tele: (503) 224-3092
Fax: (503) 224-3167

*Of Attorneys for Defendant Levi Gray*