IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUNE DOE,

          Plaintiff,

   v.

MIKE REESE, Director Oregon Department
of Corrections (ODOC); COLETTE PETERS,
former Director Oregon Department of Corrections
(ODOC); BRIAN BELLEQUE, ODOC Deputy
Director (former); HEIDI STEWARD, ODOC
Deputy Director; MICHAEL GOWER, ODOC
Assistant Director of Operations (former); ROB
PERSSON, ODOC Assistant Director of Operations,
ODOC Westside Institutions Administrator (former),
Superintendent Coffee Creek Correctional Facility
(CCCF) (former); PAULA MYERS, Superintendent
Coffee Creek Correctional Facility (CCCF) (former);
ERICKA SAGE, ODOC PREA Administrator; LEVI
D. GRAY, Corrections Officer at CCCF (former);
KELLEE MOORE, ODOC Behavioral Health
Counselor, JOHN/JANE DOE, ODOC Behavioral
Health Counselors and other employees; OREGON
DEPARTMENT OF CORRECTIONS and the
STATE OF OREGON, each sued in their individual
and official capacities,

          Defendants.

Case No. 3:24-cv-02011-AB

OPINION & ORDER

Ginger G. Mooney
Ginger G. Mooney, LLC
1017 May Street Suite 200
Hood River, OR 97031

       Attorney for Plaintiff

Brian Epley
James T. Plunkett
Jonathan W. Monson
Cable Huston LLP
1455 SW Broadway Suite 1500
Portland, OR 97201-3412

       Attorneys for Defendant Gray

**BAGGIO, District Judge:**

Plaintiff June Doe brings federal claims under 42 U.S.C. § 1983 and supplemental state law claims against Defendant Levi Gray as well as the Oregon Department of Corrections ("ODOC"), the State of Oregon, and other ODOC employees. Compl., ECF No. 1. Defendant Gray now moves to dismiss for failure to state a claim upon which relief can be granted.[1] Def.'s Mot. Dismiss ("Def.'s Mot."), ECF No. 26. For the reasons below, the Court denies Defendant's Motion to Dismiss.

## BACKGROUND

Plaintiff entered Coffee Creek Correctional Facility, an ODOC facility, in June of 2014. Compl. ¶¶ 2, 50. On March 31, 2018, Plaintiff was placed in segregated housing for possession of contraband. *Id.* ¶¶ 52, 57. Plaintiff had struggled with severe anxiety throughout her incarceration, and Plaintiff's placement in segregated housing triggered severe panic attacks. *Id.* ¶¶ 51–52.

---

[1] Because only Defendant Gray moves to dismiss Plaintiff's claims at this juncture, "Defendant" refers only to Defendant Gray throughout this Opinion & Order.

On April 27, 2018, Plaintiff believed the facility's Behavioral Health Services ("BHS") had recommended "that she be moved out of segregation[;]" however, Plaintiff was then told "she would be transferred to another close supervision cell." *Id.* ¶ 54. The following day, Plaintiff told the correctional officer on duty—Defendant—about her severe anxiety and desire to move out of her close supervision cell. *Id.* ¶ 55. Defendant responded by asking Plaintiff "what she would do for him if he agreed to move her" and then "instructed her to expose her genitals and masturbate in front of him" while he watched through the cell window. *Id.* ¶¶ 55–56. Plaintiff asked, "[a]re you serious?" to which Defendant responded, "[d]o you want to move?" *Id.* ¶ 56. Plaintiff "removed her pants and did as he asked." *Id.*

The next day, April 29, Plaintiff was moved out of close supervision. *Id.* ¶ 57. On at least two more occasions, Defendant came to Plaintiff's cell window and made a facial expression that Plaintiff understood to be "a demand for a repeat of the previous incident." *Id.* ¶¶ 58, 73(2). On each occasion, Plaintiff would remove her clothes and masturbate in front of him, and Defendant would wink or call her "sexy." *Id.* ¶ 58.

Plaintiff alleges that she did not immediately report the incidents involving Defendant because Defendant "groomed" her to believe that it "was her fault and that she would get in trouble if she reported it." *Id.* ¶ 60. Plaintiff avers that "[i]t was only in March of 2024 that [Plaintiff] came to understand that she was a victim" after describing the incidents to her boyfriend. *Id.* ¶ 61. Plaintiff's boyfriend told her "this was abuse and that she should report it." *Id.* After consideration, Plaintiff reported the incidents to BHS and "realized for the first time, in processing the incident with BHS staff, that she had been a victim of abuse and was not to blame for the incidents . . . ." *Id.* ¶ 62. Plaintiff filed this lawsuit on December 3, 2024.

//

**STANDARDS**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

**DISCUSSION**

Plaintiff initially brought six claims for relief against Defendant. The parties agree that Plaintiff erroneously included Defendant in her Third, Fourth, and Fifth Claims, leaving

Plaintiff's First, Second, and Sixth Claims remaining. Def.'s Mot. 2 n.1;[2] Pl.'s Resp. 2 n.1, ECF No. 31. Plaintiff's First Claim brings suit pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's Eighth Amendment rights. Compl. ¶¶ 69–78. Plaintiff's Second Claim, also a § 1983 claim, alleges violations of Plaintiff's bodily privacy under the Fourteenth Amendment. *Id.* ¶¶ 79–86. Plaintiff's Sixth Claim alleges intentional infliction of emotional distress ("IIED") under Oregon law. *Id.* ¶¶ 116–125.

Defendant moves to dismiss all three claims against him as time-barred by the relevant statutes of limitations. Defendant also moves to dismiss the First Claim on qualified immunity grounds.

## I.    Statute of Limitations Under § 1983

Defendant moves to dismiss Plaintiff's First and Second claims—the § 1983 claims—as time-barred. Def.'s Mot. 4–6. The parties dispute the accrual date for when the statute of limitations period began to run. *Id.*; Pl.'s Resp. 7–12. The Court finds the accrual date upon which the statute of limitations began to run is not apparent on the face of Plaintiff's Complaint and thus Plaintiff's claims are not barred by the statute of limitations at this juncture.

A motion to dismiss based on a statute of limitations defense is properly brought under Rule 12(b)(6). *See Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 996–97 (9th Cir. 2006). However, a "claim may be dismissed as untimely pursuant to a 12(b)(6) motion 'only when the running of the statute [of limitations] is apparent on the face of the complaint.'" *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010)).

---

[2] The pagination in Defendant's Motion to Dismiss repeats "Page 2." Both Page 2 and Page 3 of the document are labeled Page 2. This pincite refers to the true Page 2.

The statute of limitations for § 1983 claims is derived from the forum state's "residual personal injury statute of limitations." *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 579 (9th Cir. 2012). Oregon's residual personal injury statute establishes a two-year statute of limitations. Or. Rev. Stat. § ("ORS") 12.110(1).[3]

"Although [state] law determines the *length* of the limitations period, federal law determines when a civil rights claim *accrues*." *Lukovsky v. City and Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). To make the accrual determination, federal law follows the discovery rule—that is, "a Section 1983 claim accrues 'not just when the plaintiff experiences the injury, but when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury.'" *St. Clair v. Cnty. of Okanogan*, 154 F.4th 1154, 1159 (9th Cir. 2025) (quoting *Bonneau*, 666 F.3d at 581).

Defendant argues that "Plaintiff's cause of action accrued at the time of the alleged misconduct" in 2018. Def.'s Mot. 5. Defendant focuses on Plaintiff's statute of limitations pleading in paragraph twenty of the Complaint, which reads in full:

> At the time of the incident, Plaintiff did not understand that [Defendant's] behavior was sexual abuse. She was convinced she was the one who had done something wrong by "compromising an officer," and feared that she would get in trouble if she made a report. Plaintiff maintains the statute of limitations was tolled until the time she learned in March of 202[4][4] that what she had experienced was sexual

---

[3] Plaintiff's Complaint cites ORS 12.118 for a five-year statute of limitations for sexual assault claims. Compl. ¶ 20. However, Plaintiff's Response agrees with Defendant's Motion that the two-year statute of limitations applies. Pl.'s Resp. 7; *see also, e.g.*, *Kruesi v. Oregon Dep't of Corr.*, No. 6:25-cv-00434-AA, 2025 WL 1897872, at *2–3 (D. Or. July 9, 2025) (rejecting five-year limitations under ORS 12.118 for § 1983 claim stemming from prison sexual assault).

[4] There are conflicting dates in Plaintiff's Complaint. In paragraph twenty, Plaintiff states the date as "March of 2023 . . . ." Compl. ¶ 20. At another point, Plaintiff pleads that "[i]t was only in March of 2024 that [Plaintiff] came to understand that she was a victim." Compl. ¶ 61. Defendant reports that "[d]uring [a] conferral call, Plaintiff's counsel confirmed that this date was actually in 2024." Def.'s Mot. 10 n.3. As further confirmation of 2024 as the intended date, Plaintiff changed "2023" to "2024" when quoting from the Complaint in her Response. Pl.'s Resp. 3.

abuse and that she would not be held to blame or punished for [Defendant's] actions.

Compl. ¶ 20. Defendant argues that "Plaintiff clearly knew the alleged incident was wrong [in 2018] because she considered reporting it at the time." Def.'s Mot. 5 (citing Compl. ¶ 20).

Plaintiff responds that Defendant "misconstrues and misrepresents Plaintiff's allegations." Pl.'s Resp. 10. Plaintiff argues that "contrary to [Defendant's] characterization, Plaintiff did not consider reporting [Defendant] for abuse at the time . . . because she did not understand it to be abuse. Plaintiff only knew the alleged incident was wrong in the sense that she believed she had been the one to do something wrong." *Id.* Plaintiff further argues that she "reasonably did not report an inmate-staff interaction that she believed she was responsible for and that would only get her blamed and in trouble." *Id.*

At the motion to dismiss stage, where all reasonable inferences are drawn in favor of Plaintiff, there remain factual questions as to what behavior or actions Plaintiff considered reporting in 2018. It is not as clear as Defendant suggests that what Plaintiff considered reporting in 2018 was sexual abuse on the part of Defendant. The recent Ninth Circuit decision in *St. Clair* is instructive. 154 F.4th at 1154. In *St. Clair*, the plaintiff alleged that a sheriff's deputy used his knowledge of her criminal activity to coerce her to perform sexual acts. *Id.* at 1156. The plaintiff further alleged that "accrual of her Section 1983 claim was delayed because, due to her age, addiction, and the coercion, she did not understand the nature of the harm until long after the sexual encounters." *Id.* at 1159. The Ninth Circuit reversed the district court's dismissal, finding that the vulnerable plaintiff "sufficiently allege[d] evidence at the motion to dismiss stage that the delayed realization of her injuries justifies the delayed filing." *Id.* at 1160. The panel explained:

> Our decision acknowledges that the power imbalance between a law enforcement officer and a vulnerable victim of sexual assault may result in a delayed realization of the underlying harm. As we have previously highlighted, "[m]any victims of sexual assault feel so upset, embarrassed, humiliated, and ashamed about the assault that they do not tell anyone that it occurred."

*Id.* (quoting *Mousa v. Mukasey*, 530 F.3d 1025, 1027 (9th Cir. 2008)). The panel continued, "precisely 'what [the plaintiff] knew and when she knew it are questions of fact' . . . ." *Id.* (quoting *Simmons v. United States*, 805 F.2d 1363, 1368 (9th Cir. 1986)). Like in *St. Clair*, Plaintiff here alleges characteristics of vulnerability as well as a power imbalance between her and Defendant, a corrections officer. *See* Compl. ¶¶ 2, 51, 55–56. In light of *St. Clair*, the Court finds that the accrual date upon which the statute of limitations began to run is not "apparent on the face of the complaint." *U.S. ex rel. Air Control Techs.*, 720 F.3d at 1178 (quoting *Von Saher*, 592 F.3d at 969). Thus, Defendant's motion with respect to § 1983 statute of limitations is denied.

## II.    Statute of Limitations Under Oregon Law

Defendant next moves to dismiss Plaintiff's Sixth Claim—the IIED claim—as time-barred under the applicable state statute of limitations. Def.'s Mot. 6–11. The parties again dispute the accrual date. *Id.*; Pl.'s Resp. 12–18.

Oregon's Tort Claims Act has a two-year statute of limitations. ORS 30.275(9). Like federal law, Oregon follows the discovery rule doctrine for when a cause of action accrues. *Gaston v. Parsons,* 318 Or. 247, 255–56, 864 P.2d 1319 (1994). But unlike the federal discovery rule, where a plaintiff need not be aware of the legal injury, *United States v. Kubrick,* 444 U.S. 111, 123 (1979), Oregon law requires awareness of the legal injury: "a plaintiff must have a reasonable opportunity to become aware of . . . three elements before the statute of limitations will begin to run: (1) harm; (2) causation; and (3) tortious conduct." *FDIC v. Smith*, 328 Or 420,

428, 980 P.2d 141 (1999) (citing *Gaston*, 318 Or. at 255–56); *see also Scriber v. Peters*, No. 3:21-cv-00858-AR, 2023 WL 4074768, at *3 (D. Or. June 18, 2023) (describing this difference between the Oregon and federal discovery rules).

This additional Oregon element for accrual, however, is not relevant here. The Court has already found that the accrual date of the harm and causation prongs—the only factors in the federal law analysis—is not apparent on the face of the complaint. Just as this finding precludes dismissing Plaintiff's § 1983 claims, so too does it preclude dismissing Plaintiff's state law claim on statute of limitations grounds.

## III.    Qualified Immunity

Defendant moves to dismiss Plaintiff's First Claim—the § 1983 claim alleging violations of the Eighth Amendment—as barred by qualified immunity. Def.'s Mot. 12–15. The Court finds that Defendant is not entitled to qualified immunity at the motion to dismiss stage.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Determining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). Courts must weigh "competing rules" to not dismiss claims to relief that are facially plausible, *id.* at 1234–35, while respecting that because qualified immunity is properly understood as an immunity from suit rather than a legal defense, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation[,]" *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

"To be entitled to qualified immunity at the motion to dismiss stage, an officer must show that the allegations in the complaint [(1)] do not make out a violation of a constitutional right or [(2)] that any such right was not clearly established at the time of the alleged misconduct." *Hampton v. California*, 83 F.4th 754, 765 (9th Cir. 2023) (citing *Pearson*, 555 U.S. at 232–36), *cert. denied sub nom. Diaz v. Polanco*, 144 S. Ct. 2520 (2024). "[D]ismissal is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies." *Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023) (quoting *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016), *cert. denied*, 144 S. Ct. 2520 (2024).

"[A] right is clearly established when the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hampton*, 83 F.4th at 769 (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016)). "To determine whether a right was clearly established, a court turns to Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010) (citing *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)). "In the absence of binding precedent, courts should look to available decisions of other circuits . . . ." *Id.*

Here, Defendant presses on the second prong of the qualified immunity analysis—that "Plaintiff cannot establish that [Defendant] violated a right that was clearly established at the time of his alleged misconduct." Def.'s Mot. 12. Specifically, Defendant argues that "sexual harassment by a prison guard which does not involve physical touch" did not constitute a clearly established Eighth Amendment violation in the Ninth Circuit in 2018. *Id.* at 14.

At the time of the alleged acts in 2018, the Ninth Circuit had articulated that physical sexual abuse was a violation of the Eighth Amendment but that mere verbal sexual harassment did not constitute a violation. *Compare Schwenk v. Hartford*, 204 F.3d 1187, 1194 (9th Cir.

2000) (affirming denial of qualified immunity where the defendant, among other things, "grabbed [the plaintiff in custody], turned her around forcibly, pushed her against the bars, and began grinding his exposed penis into her buttocks"), *and Wood v. Beauclair*, 692 F.3d 1041, 1044–45 (9th Cir. 2012) (finding the plaintiff stated an Eighth Amendment claim when the defendant, among other things, at least twice entered the plaintiff's cell and "cupped" or "grabbed" the plaintiff's penis), *with Austin v. Terhune*, 367 F.3d 1167, 1171–72 (9th Cir. 2004) (upholding dismissal of Eighth Amendment claim where the defendant taunted the plaintiff and exposed his penis from inside the control booth, reasoning "the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment").

Defendant reads this precedent narrowly as precluding any non-physical sexual abuse from being considered clearly established and thereby discounts the Ninth Circuit's pronouncement in 2012 that "[s]exual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." *Wood*, 692 F.3d at 1046. In addition, caselaw from other circuits had, by 2018, found Eighth Amendment violations for incidents that did not involve physical touching. For example, the Sixth Circuit in 2019 affirmed a district court's 2017 denial of qualified immunity where the defendant made "repeated demands that [the plaintiff in custody] expose her breasts and masturbate . . . ." *Rafferty v. Trumbull Cnty., Ohio*, 915 F.3d 1087, 1095 (6th Cir. 2019). There, like here, the defendant "argue[d] that he did not violate the Eighth Amendment because he did not physically touch [the plaintiff]." *Id.* at 1096. The Sixth Circuit disagreed, noting the Circuit had "held nearly three decades ago that sexual abuse of inmates can violate the Eighth Amendment even in the absence of physical touching by a corrections officer." *Id.* (citing *Kent v. Johnson*, 821 F.2d 1220, 1227 (6th Cir. 1987) (holding that inmate stated an Eighth Amendment claim when he alleged that female guards regularly

watched him shower)). The Court recognizes that the Sixth Circuit decision in *Rafferty* was not issued until the year after the instant alleged incidents. *Id.* However, the Sixth Circuit made clear that it was not making any new pronouncements about the Eighth Amendment but rather applying its own precedent from "nearly three decades ago" as well as that of the Seventh and D.C. Circuits. *Id.* (citing *Kent*, 821 F.2d at 1228; *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003); *Daskalea v. District of Columbia*, 227 F.3d 433, 439–41 (D.C. Cir. 2000)).

At the motion to dismiss stage, without a factual record, the Court declines to find that Defendant is entitled to qualified immunity. But the Court's "decision at the motion-to-dismiss stage sheds little light on whether [Defendant] might ultimately be entitled to qualified immunity" in later proceedings with a more developed factual record. *Keates*, 883 F.3d at 1235.

## CONCLUSION

The Court DENIES Defendant Gray's Motion to Dismiss [26].

IT IS SO ORDERED.

DATED this <u>16th</u> day of January, 2026.

AMY M. BAGGIO
United States District Judge